Tatuok, Chief-Justice,
 

 delivered the opinion of the Court:
 

 It is very clear that the words of the act of 1789. ch. 23, do not provide any time of limitation to suits brought against devisees, nor can the Court, after an attentive consideration of its equity and spirit, dishorn any satisfactory ground on which such a construction can be rested. The creditors are required to make demand, within the time limited, against the executor or administrator from whose qualification the period is computed j a provision necessarily implying that the claims must he of that description, which the representatives of the personal estate are, in the first instance, liable to pay. But where a creditor having a direct remedy, which he chooses to enforce against the heir or devisee, from a belief that the real fund is either more solvent or more accessible than the personal one, it is difficult to imagine a reason why he should be compelled to make a demand of the executor or administrator; or why 'it is necessary for him to take notice of the time of their qualification.
 

 The wdiole act relates either to the proving of wills and granting letters of administration, or to tlie recovery of such debts as are to be paid out of the personal estate. It points to the convenience of that class of creditors, and to the safety and protection of executors and
 
 *110
 
 administrators after a certain period, provided they perform specified duties, intended to apprise creditors of the ,]eai[, 0f †|16 testator or intestate, and to secure the personal assets, so that they may be forthcoming to their demands.'
 

 It is worthy of remark, that at the very same session, a law was passed, which, for the first time rendered de-visees liable to the payment of debts. So that had the Legislature designed to extend the limitation to them and to heirs, they would probably have done so in express terms
 
 ;
 
 and as the whole subject was brought under view, as well the alteration of the law on such a material point, as the'time of limitation prescribed by the act of 1715, the omission can scarcely be ascribed to inadvertence. The act of 1789, professes to supply the deficiency of the act of 1715, in which the limitation is expressed in terms essentially different. It fixes the death of the debtor as the period from which the time is to be computed j nor does it, like the act of 1789, require the demand to he made of the executor or
 
 administrator;
 
 thereby confining the operation of the la'* to such debts as they are liable to be sued for. From whom the demand is to be made, must, under Ihc act of 1715, be determined by the nature of the debt itself; it may be made of the heir, if lie is liable by the nature of the contract j it may be made of the executor or administrator, if the creditor will not or cannot pursue the heir in the first instance. So that in this view of the subject, there is no conflict between the two laws, which being intended to promote different objects, may well stand together. The act of 1715, was designed to protect the heir and every part of the estate, from demands of whatsoever kind or nature $ the act of 1789 was intended to protect the executor and administrator, from such demands as they alone are liable to in the first instance, or such as the creditor may elect to enforce against them.
 

 That there should he a diversity of opinion as to the. repeal of the act of 1715, between this Court and the Su-.
 
 *111
 
 preme Court of the United States, we cannot but regret; and if authority were a proper arbiter on such a ques,.tion, there is none to .which wc could submit with more
 
 pleasure;
 
 becau'sc \ve highly estimate the talents and integrity which adorn that Bench. But the exposition and construction of the legislative acts of this State, will be sought for and expected in thiis tribunal, by the citizens of the State ; and we are bound to give that judgment which the best exercise of our own understandings will enable us to pronounce. — Let there be judgment for the Plaintiff. ,